IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LISA G. LUCAS and DAVID R. LUCAS
individually and on behalf of a class of
similarly situated persons,

                Plaintiffs,

v.                                     CIVIL ACTION NO.   3:13-2194

FIFTH THIRD MORTGAGE COMPANY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiffs' motion to remand the complaint to the Circuit Court of Wayne County, West Virginia. ECF No. 13. For the reasons stated below, the motion is **GRANTED**.

**I.    BACKGROUND**

This action arises from Defendant Fifth Third Mortgage Company's[1] home mortgage loan servicing practices. Plaintiffs Lisa and David Lucas are homeowners who obtained a mortgage serviced by Defendant. They filed this action individually and on behalf of a class of other West Virginia borrowers holding loans serviced by Defendant. The nine-count complaint, originally filed in the Circuit Court of Wayne County, West Virginia, alleges both statutory and common law causes of action.

On behalf of the proposed class, Plaintiffs allege that Defendant charged a $30 fee for late mortgage payments, which exceeds the $15 limit for such fees imposed by West Virginia law.

---

[1] The complaint originally named two defendants, Fifth Third Mortgage Company and Fifth Third Bancorp. Compl., ECF No. 1-1. Defendant Fifth Third Bancorp was voluntarily dismissed from the case by stipulation on February 28, 2013. ECF No. 11.

Compl. ¶¶ 8-9; *see* W. Va. Code § 46A-3-112(1)(a). Defendant's late fee also allegedly exceeds the $15 limit contained in Defendant's loan agreement with Plaintiffs. Compl. ¶¶ 8-9. Plaintiffs further claim that Defendant assessed multiple late fees for a single late or missed payment, in violation of W. Va. Code §§ 46A-3-112(2)[2] and (3). Compl. ¶¶ 11-12. These statutory provisions allow a delinquency charge to "be collected only once on an installment however long it remains in default," W. Va. Code § 46A-3-112(2), and requires payments to "be applied first to current installments, then to delinquent installments and then to delinquency and other charges," *id.* § 46A-3-112(3). Finally, Plaintiffs claim that Defendant refused to credit loan payments to the principal and interest due under the loan agreement, instead placing the payment into an unapplied account. Compl. ¶ 15. Plaintiffs allege that this practice violates W. Va. Code § 46A-2-115(c), which requires payments to "be credited upon receipt against payments due," and also W. Va. Code § 46A-3-111(1), which requires that payments "be applied to installments in the order in which they fall due."

Plaintiffs filed this action on behalf of all other similarly situated individuals pursuant to Rule 23 of the West Virginia Rules of Civil Procedure. The proposed class is defined as:

> All West Virginia citizens at the time of the filing of this action who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, had or have loans serviced by the Defendants, and (a) were assessed late fees in excess of $15 per fee, (b) were assessed multiple late[ ]fees for a single late payment, (c) were charged late fees when in fact timely payment was made, or (d) made a payment that that [sic] the Defendant[] refused to credit against the borrower's account.

Compl. ¶ 18. In its Answer, Defendant denied that Plaintiffs have satisfied the requirements for class actions in West Virginia, found in Rule 23.

---

[2] In their complaint, Plaintiffs mistakenly cite W. Va. Code §§ 46A-3-112*(b)*(2) and (3) (emphasis added).

On February 7, 2013, Defendant removed this action to this Court. Defendant claims that this Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (d)(5)(B). CAFA confers upon district courts original jurisdiction over any civil action in which: (1) the amount in controversy exceeds $5,000,000; (2) the class is composed of at least 100 members; and (3) any member of a class of plaintiffs is a citizen of a State different from any defendant. Now Plaintiffs move to remand, arguing that Defendant has produced insufficient facts to prove its allegations supporting this Court's subject matter jurisdiction under CAFA. With this matter ripe for disposition, the Court now turns to the parties' arguments and applicable legal standards.

## II.     ANALYSIS

### A.     Legal Standard

In considering remand motions, courts must construe removal statutes within the framework of federalism, which strictly confines federal jurisdiction to congressionally defined limits. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *see also Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008) (recognizing that "federal courts . . . are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations"). "The policy of the [removal] statute calls for its strict construction. . . . Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). Therefore, "[i]f federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

It is well established that the burden of demonstrating federal jurisdiction falls on the party seeking removal. *Strawn*, 530 F.3d at 297 (citation omitted). The enactment of CAFA has not changed this traditional rule. *Id*. When jurisdiction is challenged, the removing party must prove jurisdiction by a preponderance of the evidence, *i.e.*, that it is more likely than not that the number of class members is at least 100. *See Sayre v. Potts,* 32 F. Supp. 2d 881, 885 (S.D. W. Va. 1999) (adopting preponderance of the evidence standard). Plaintiffs argue that Defendant has produced insufficient evidence proving that the amount-in-controversy and numerosity requirements of CAFA are satisfied, and thus that remand is appropriate.

**B.     Application**

In its notice of removal, Defendant argues that the numerosity requirement is satisfied with respect to the class members for whom Defendant allegedly charged multiple late fees for a single missed or late mortgage payment. ECF No. 1 ¶¶ 12-14. Defendant relies on an affidavit provided by Kathey Howard, Assistant Vice President of Fifth Third Bank and Manager of Business Analysis. Aff. of Kathey Howard ¶ 1, Ex. B, ECF No. 1-2. Ms. Howard states that she reviewed the records of West Virginia borrowers and identified 415 whose loans: (1) were assessed a late charge on at least two consecutive months; and (2) showed receipt of a payment after the date the initial late charge was assessed. Howard Aff. ¶ 4. Defendant argues that these records demonstrate that the numerosity requirement is thus satisfied, because more than 100 class members were identified.

In their motion to remand, Plaintiffs argue that Ms. Howard's results are flawed by faulty logic, because they include borrowers outside the proposed class—those that received legitimate consecutive late charges. West Virginia Code §§ 46A-3-112(2) and (3) prohibit creditors from collecting a late charge more than once on a defaulted payment, no matter how long it remains in

default. Furthermore, creditors may not collect a late charge for any installment which is paid timely and in full, even if an earlier installment may not have been paid in full. As Plaintiffs explain, Defendant may charge a borrower a late fee for a missed January payment. If the borrower makes a full and timely February payment, Defendant may not lawfully charge a late fee in February, even though the January payment is still outstanding. Defendant is permitted, however, to charge a late fee again in February if the borrower was also delinquent in his February payment. Ms. Howard's analysis does not exclude borrowers who were assessed a subsequent late charge legitimately—borrowers whose intervening payment was deficient in some way.

Defendant apparently does not disagree with Plaintiffs' assessment of its original evaluation method. In its opposition to Plaintiffs' motion to remand, Defendant provided another detailed statistical analysis of borrower data, as described in an affidavit by Steve Langguth, Vice President and IT Mortgage Servicing Manager of Fifth Third Bank. Langguth Aff., Ex. A, ECF No. 15-1. Defendant first stated that the total number of borrowers satisfying the criteria in Ms. Howard's initial analysis had increased from 415 to 449.[3] Next, Defendant performed a manual review of the accounts for a sample of 10 percent of those 449 borrowers.[4] Langguth Aff. ¶ 6. This sample was reviewed to identify borrowers who were assessed a first late charge, made a full and timely payment, then were assessed a subsequent late charge (referred to as a "stacked late charge"), which is alleged to be in violation of West Virginia law. Langguth Aff. ¶¶ 7, 9. Defendant determined that 24 of the 41 borrowers (58.5%) had been assessed a stacked late

---

[3] Defendant explains that the additional 34 borrowers are those having Federal Housing Administration loans, who were excluded from the initial analysis.

[4] Although Defendant selected 45 accounts to review, it later determined that four of these accounts "were not viewable in electronic format" and were thus excluded because they "could not be reviewed without additional time." Langguth Aff. ¶ 8. Instead of 45 borrowers' accounts, Defendant analyzed 41, which is closer to nine percent of the larger borrower population.

charge. Defendant states that when those results are extrapolated to the larger population of 449 borrowers, it suggests that 260 borrowers would have been assessed at least one stacked late charge and would thus qualify as class members. ECF No. 15 at 3-4.

The dispositive question facing the Court is this: do Defendant's statistical analyses demonstrate by a preponderance of the evidence that there are at least 100 class members in this action? Plaintiffs argue that the statistical results are no better than speculation and conjecture, which this Court should not credit in its analysis, following the lead of other decisions from this district. *See Caufield v. EMC Mortgage Corp.*, 803 F. Supp. 2d 519, 526-27 (S.D. W. Va. 2011) (defendant mortgage servicer failed to meet its burden showing CAFA jurisdiction where defendant showed that the total number of West Virginia borrowers exceeded the threshold, but did not show how many of those borrowers had their loans serviced in violation of the law, as alleged in the complaint); *Hedrick v. Citimortgage Inc.*, No. 2:12-cv-00537, 2012 U.S. Dist. LEXIS 58348, at *7-8 (S.D. W. Va. Apr. 26, 2012) (defendant servicer failed to demonstrate satisfaction of CAFA's numerosity requirement with affidavit that provided the number of accounts where delinquency or default-related charges were incurred, but the complaint only alleged violations regarding default-related charges).

The Court does not believe that Defendant's proof in this case suffers from the same deficiencies as that in the cases recited above. Nonetheless, the Court finds that Defendant has failed to satisfy its burden demonstrating that the jurisdictional requirements are satisfied here. First, the Court notes that it observes no readily apparent flaw in the logic Defendant employed in its second statistical analysis as described in the Langguth Affidavit. By counting only those borrowers who were assessed a late charge after making a full and timely payment, Defendant's results should not be overinclusive, as was the case in *Hedrick*. Defendant, however, has given

the Court no evidence from which it can conclude that the results are valid and reliable according to sound principles of statistics. For example, while Mr. Langguth described how the random sample of accounts was selected,[5] he did not state that the chosen sample size of 45 was large enough to yield results with any statistical significance. Indeed, Defendant did not indicate any confidence level of its analysis.[6] The Court similarly has no information regarding the confidence interval (also known as the margin of error) of the analysis. In sum, Defendant has not demonstrated that the results of its analysis can be properly extrapolated to the larger population of borrowers with confidence. Accordingly, Defendant has failed to meet its burden to demonstrate that the statutory requirements of jurisdiction under CAFA are satisfied here, and the case must be remanded. Given the Court's conclusion on the numerosity issue, it need not determine whether Defendant made a sufficient showing that it satisfied CAFA's amount-in-controversy requirement, though the Court would apply the same analysis. While Defendant's estimate of 260 class members may in fact be an accurate approximation, the Court cannot be confident that Defendant's estimate is credible, given the lack of evidence regarding the reliability of the analysis. Therefore, remand is appropriate. *See Caufield v. EMC Mortgage Corp.*, 803 F. Supp. 2d 519, 528 (S.D. W. Va. 2011) ("The mere possibility that the plaintiff and proposed class *could* meet that requirement is not enough to give this court jurisdiction.") (emphasis in original).

---

[5] The list of 449 borrowers was arranged in order by account number and every tenth account was then selected to include in the sample. Langguth Aff. ¶ 6.

[6] A confidence level of 95% is the commonly accepted statistical standard. *See In re Sprint Nextel Corp.*, 593 F.3d 669, 675-76 (7th Cir. 2010) (citing Michael O. Finkelstein & Bruce Levin, *Statistics for Lawyers* 120 (2d ed. 2001)).

### III. CONCLUSION

The Court finds that Defendant has failed to demonstrate by a preponderance of the evidence that CAFA's numerosity and amount-in-controversy requirements are satisfied in this case. Defendant has failed to satisfy its burden to demonstrate that jurisdiction is proper before this Court. Consequently, the Court **GRANTS** Plaintiffs' motion to remand. The Court **ORDERS** that this case be **REMANDED** to the Circuit Court of Wayne County, West Virginia and **STRICKEN** from the docket of this Court.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: April 9, 2013

_____
ROBERT C. CHAMBERS, CHIEF JUDGE